BRYSON, Circuit Judge.
 

 The Secretary of Veterans Affairs appeals from a decision of the Court of Appeals for Veterans Claims (“the Veterans Court”) directing that specially adapted housing benefits be awarded to Dee W. Kilpatrick, a disabled veteran. Because we agree with the Veterans Court that Mr. Kilpatrick is entitled to the housing benefits at issue, we affirm.
 

 I
 

 Mr. Kilpatrick served on active duty in the United States Army from 1960 to 1963. His military service entitled him to medical treatment from the Department of Veterans Affairs (“DVA”). In the early 1990’s, Mr. Kilpatrick sought treatment at a DVA medical center for back pain, a condition not related to his military service. The medical personnel at the DVA medical center determined that a ruptured disc in Mr. Kilpatrick’s spine was the source of his pain, and they attempted to repair the injury surgically on April 19, 1994.
 

 The surgery resulted in severe complications. The record indicates that before the surgery Mr. Kilpatrick had the use of both of his legs and control of his bladder
 
 *1377
 
 and bowel functions. After the surgery, Mr. Kilpatrick could not walk or use his legs'and had lost bowel and bladder control. The DVA determined that the disabilities that afflicted Mr. Kilpatrick following the surgery were “not the natural consequence” of the procedure and rated him as 100.percent disabled as the result of the medical treatment he had received at the DVA medical center.
 

 Mr. Kilpatrick applied for disability compensation under Title 38, Chapter 11. Chapter 11 compensation is normally reserved for veterans with service-connected disabilities.
 
 See
 
 38 U.S.C. § 1110. However, section 1151 of title 38 provides compensation for veterans like Mr. Kilpatrick who are disabled as a result of VA medical or surgical treatment. At the time of Mr. Kilpatrick’s claims, section 1151 provided as follows, in pertinent part:
 

 Where any veteran shall have suffered, an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, ... awarded under any of the laws administered by the Secretary, or as a result of having submitted to an examination under any such law, and not the result of such veteran’s own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.
 

 38 U.S.C. § 1151 (1994); Section 1151 has been substantially revised,
 
 see
 
 38 U.S.C. § 1151 (2000), but not in a way that affects the issue presented in this case.
 

 In accordance with section 1151, the DVA awarded Mr. Kilpatrick special monthly compensation under chapter 11 for loss of use of both legs and loss of bowel and bladder control. In August of 1996, Mr. Kilpatrick applied for additional benefits to assist him in dealing with his disability: the specially adapted housing benefits provided under 38 U.S.C. § 2101, and the automobile and adaptive equipment benefits provided under 38 U.S.C. § 3902. A regional office of the DVA denied his request for those benefits, and he appealed the denial to the Board of Veterans’ Appeals. While his appeal before the Board was pending, the DVA Office of General Counsel issued a precedential opinion in another case in which the General Counsel’s office concluded that section 1151 beneficiaries were not eligible for the special housing and automobile benefits under 38 U.S.C. §§ 2101 and 3902. When reviewing Mr. Kilpatrick’s case, the Board treated the General Counsel opinion as binding and characterized it as follows:
 

 [T]he [General Counsel] opinion determined that a veteran with a disability that resulted from VA hospitalization or medical or surgical treatment who has been determined eligible for compensation “as if’ such injury were service-connected pursuant to [section] 1151 is not eligible for either a special housing adaptation grant or a grant for acquiring an automobile and adaptive equipment as a result of the disability caused by VA medical care. Essentially, the benefits currently sought by the veteran, as provided under chapters 21 and 39, are beyond the scope of the grant of benefits provided under § 1151.
 

 Because the Board is bound by prece-dential opinions of the DVA General Counsel,
 
 see
 
 28 C.F.R. § 19.5, and because Mr. Kilpatrick’s claims for chapter 21 and chapter 39 benefits were “based on disabilities resulting from VA medical care and not from military service,” the Board concluded that Mr. Kilpatrick was not entitled to those benefits.'
 

 
 *1378
 
 Mr¡ Kilpatrick appealed the Board’s decision to the Veterans Court. As to the housing benefits claim, the court reversed the Board’s decision. The court found section 2101(a) to be plain on its face. That section authorizes the DVA
 

 to assist any veteran who is entitled to compensation under chapter 11 of this title for permanent and total service-connected disability ... due to the loss, or loss of use, of both lower extremities ... in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the veteran’s disability, and necessary land therefor.
 

 38 U.S.C. § 2101(a). The Veterans Court reasoned that Mr. Kilpatrick was eligible for housing assistance because, under section 1151, he was entitled to the same chapter 11 compensation that is due to a veteran who had suffered a permanent and total service-connected disability. Accordingly, the court held that the DVA regulation governing housing benefits, 38 C.F.R. § 3.809, is invalid “to the extent that it is interpreted to exclude section-1151 beneficiaries by requiring that a listed disability be ‘incurred or aggravated as the result of [active] service.’ ” The court likewise held that the General Counsel’s opinion addressing the eligibility of section 1151 beneficiaries is invalid “in purporting to bar a section-1151 beneficiary from eligibility.” The court noted that although section 2101(a) could be read to establish a discretionary program, the Secretary’s discretion “would be only as to whether to implement or not the program for the beneficiaries prescribed by Congress. There is no reason to believe that Congress gave him leave to pick and choose .from the classes to which Congress granted eligibility.”
 

 With respect to Mr. Kilpatrick’s claim for automobile benefits, the court ruled that the Board’s decision on that issue was “deficient in terms of an adequate statement of reasons .or bases.” The court therefore remanded the automobile benefits issue for further .consideration in light of the language and legislative history of Chapter 39.
 

 The government appeals from the Veterans Court’s award of the housing benefit. We have jurisdiction over the appeal as to the housing claim, notwithstanding the Veterans Court’s remand of the automobile claim, because the two are not parts of the same claim, but are distinct claims having separate legal sources and therefore may be appealed separately.
 
 See Smith v. Gober,
 
 236 F.3d 1370, 1371-72 (Fed.Cir.2001);
 
 Elkins v. Gober, 229
 
 F.3d 1369, 1372-77 (Fed.Cir.2000).
 

 II
 

 The parties agree that Mr. Kilpatrick’s disability is not service-connected because the injury he' suffered as a consequence of his surgery did not occur while he was on active duty. The parties further agree that Mr. Kilpatrick is entitled under section 1151 to the same compensation under chapter 11 of title 38 that a person with an actual service-connected disability is entitled to receive. The dispute is over whether Mr. Kilpatrick is entitled to the same housing benefits under chapter 21 of title 38 that would be available to a veteran with a service-connected disability. That question turns on the interpretation of section 2101(a), which provides that chapter 21 benefits may be extended to “any veteran who is entitled to compensation under chapter 11 of this title for permanent and total service-connected disability.” According to the government, section 2101(a) means that chapter 21 benefits are available only to that subset of all chapter 11 beneficiaries who receive compensation for a permanent and total service-connected disability. According to Mr. Kilpatrick,
 
 *1379
 
 section 2101(a) means that chapter 21 benefits are available to all persons who are compensated under chapter 11 in the same manner as veterans with permanent and total service-connected disabilities. The difference, of course, is that Mr. Kilpatrick qualifies under the second interpretation of the statutory language, but not under the first.
 

 The government argues that this is a “plain language” case and that the text of section 2101(a) is dispositive in its favor. The government reads section 2101(a) as containing two requirements: (1) the veteran must have a disability that qualifies for compensation under chapter 11; and (2) the veteran’s disability must be service-connected. Because Mr. Kilpatrick does not satisfy the second requirement, the government contends that is the end of the matter, and the judgment of the Veterans Court granting him benefits must be reversed.
 

 The Veterans Court agreed that section 2101(a) has a “plain meaning,” but the plain meaning that it discerned is quite different from the “plain meaning” that the government advocates. Under the court’s interpretation, section 2101(a) merely requires (1) that the veteran be entitled to compensation under chapter 11, and (2) that the compensation be that which is awarded for permanent and total service-connected disability. In this case, as the Veterans Court explained, Mr. Kilpatrick was entitled to compensation under chapter 11, and the chapter 11 compensation to which he was entitled, pursuant to section 1151, was the same as that awarded to veterans with permanent and total service-connected disabilities. Accordingly, under the court’s “plain meaning” analysis, Mr. Kilpatrick was entitled to the housing benefits he sought, and the regulation and General Counsel opinion to the contrary were invalid as contrary to statutory mandate.
 

 Although the parties offer us two competing, and contrary, “plain meanings,” we conclude that the statutory language alone does not compel either proposed interpretation. After examining the statutory context and background, however, we are satisfied that the interpretation adopted by the Veterans Court and espoused by Mr. Kilpatrick is the correct one.
 

 A
 

 The predecessor to section 1151 was first enacted as section 213 of the World War Veterans’ Act of 1924, Pub.L. No. 68-242, § 213, 43 Stat. 607, 623. It provided that the benefits of title II of the 1924 Act, which provided compensation to disabled veterans of World War I, would be awarded to those veterans who were injured or whose existing injuries were aggravated “as the result of training, hospitalization, or medical or surgical treatment.”
 
 Id.
 
 The benefits of title II were to be provided to section 213 veterans “in the same manner as though such disability, aggravation, or death was the result of military service during the World War.”
 
 Id.
 

 Section 213 of the 1924 Act was repealed in 1933 and replaced in 1934 by a similar statute that applied to veterans generally, and not simply to veterans of World War I.
 
 See
 
 Pub.L. No. 73-141, § 31, 48 Stat. 509, 526 (1934). The new statute provided that specified compensation benefits would be awarded to persons who suffered an injury or aggravation of an existing injury as the result of training, hospitalization, or medical or surgical treatment provided pursuant to the veterans’ benefit laws “in the same manner as if such disability, aggravation, or death were service connected within the meaning of such laws.”
 
 Id.
 
 That provision was codified as section 501a of title 38.
 

 
 *1380
 
 In 1948, Congress enacted the statute that created the specially adapted housing benefit at issue in this case.
 
 See
 
 Pub.L. No. 80-702, 62 Stat. 500 (1948). The new statute,. which was codified as subsection (g) of section 701 of title 38, provided:
 

 Any person who served in the active, military or naval service of the United States who is entitled to compensation ... for permanent and total service-connected disability due to spinal-cord disease or injury with paralysis of the legs and lower part of the body shall be entitled to assistance in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the person’s disability, and necessary land therefor....
 

 38 U.S.C. § 701(g) (Supp. II 1948). Both before and after section 701(g) was enacted, section 501a of title 38 (the predecessor to the current section 1151) included the benefits of section 701 of title 38 among the benefits provided to persons suffering a disability because of medical or surgical treatment by the VA.
 
 See
 
 38 U.S.C. § 501a (1946 & Supp. II 1948). Accordingly, when subsection (g) was added to section 701 in 1948, the benefits available to persons disabled as a result of VA medical treatment clearly .included “assistance in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the person’s disability.”
 

 The government argues that the legislative history of the 1948 specially adapted housing statute, section 701(g), supports its construction of the version of that statute, section 2101(a). The government points in particular to a Senate report that comments that section 701(g) extended adapted housing assistance to “any person who served in the active military or naval service who is entitled to compensation ... for a permanent and total service-connected (wartime or peacetime) disability.” S.Rep. No. 80-1564, a
 
 t
 
 (1948),
 
 reprinted in
 
 1948 U.S.C.C.A.N- 1910. But that report merely rehearses the text of section 701(g). It does not address section 501a, which extended all section 701 benefits, including the benefits conferred by section 701(g), to persons in Mr. Kilpatrick’s position. The government’s discussion of the 1948 legislation, and various subsequent statutes through 1986, follows the same pattern — focusing on the “service-connection” requirement of the specially adapted housing statute, while ignoring the statute that extended adapted housing benefits to persons injured by VA hospitalization, surgery, or medical procedures. Contrary to the government’s suggestion, it is inescapably clear that as of 1948 a veteran in Mr. Kilpatrick’s position would have been entitled to specially adapted housing benefits. The question that may fairly be posed to the government is when, if ever, Congress withdrew that benefit from persons such as Mr. Kilpatrick.
 

 Although minor changes were made in the scope of the benefits provided, the relationship between section 501a and section 701(g) remained unchanged until 1957. In that year, Congress enacted the Veterans’ Benefits Act of 1957, Pub.L. No. 85-56, 71 Stat. 83 (1957), which recodified the veterans’ benefit statutes. The purpose of the new statute was “to consolidate into one act, and to simplify and make more uniform, the laws administered by the Veterans’ Administration relating to compensation, pension, hospitalization, and burial benefits.” H.R.Rep. No. 85-279, at 1 (1957),
 
 reprinted in
 
 1957 U.S.C.C.A.N. 1214.
 

 The 1957 Act replaced section 501a with the following language, found in section 351 of the new Act, which was codified at 38 U.S.C. § 2351 (Supp. V 1957):
 

 
 *1381
 
 When any veteran shall have suffered an injury, or an aggravation of an injury, as the result of ... hospitalization, or medical or surgical treatment, awarded him under any of the laws administered by the Veterans’ Administration ... and such injury or aggravation results in additional disability to or death of such veteran, disability compensation under this title and dependency and indemnity compensation under the Servicemen’s and Veterans’ Survivor Benefits Act shall be awarded in the same manner as if such disability, aggravation, or death were service-connected....
 

 Pub.L. No. 85-56, § 351, 71 Stat. 83, 102 (1957). Section 351 of the new Act was found in a title labeled “Compensation for Service-Connected Disability or Death.” A separate title, labeled “Specially Adapted Housing for Disabled Veterans,” contained section 601, codified at 38 U.S.C. § 2601 (Supp. V 1957), which replaced former section 701(g).
 
 See
 
 Pub.L. No. 85-56, § 601, 71 Stat. 83, 114 (1957). The new section 601 stated:
 

 The Administrator is authorized, under such regulations as he may prescribe, to assist any veteran, who is entitled to compensation under Title III of this Act, ... for permanent and total service-connected disability due to the loss, or loss of use ... of both lower extremities, ... in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the veteran’s disability, and necessary land therefor.
 

 Because section 601 of the 1957 Act was not included in the same title as section 351 of the Act, and because section 351 specified “disability compensation under this title,” the effect was that the specially adapted housing benefit was no longer included among those benefits expressly extended to veterans who were disabled as a result of VA medical and surgical procedures. Nonetheless, the legislative history of the 1957 Act makes it quite clear that Congress did not intend to exclude such veterans from receiving specially adapted housing benefits. The House and Senate reports accompanying the bill that became the 1957 Act, which are largely identical, stated that the Act was intended to “consolidate into one act, and to simplify and make more uniform, the [veterans’ benefit] laws.” H.R.Rep. No. 85-279, at 1 (1957),
 
 reprinted in
 
 1957 U.S.C.C.A.N. 1214; S.Rep. No. 85-332, at 1 (1957),
 
 reprinted in
 
 1957 U.S.C.C.A.N. 1241. The Act was not intended to make significant changes in the law, but merely to
 

 incorporate[ ] into a single act the subject matter of the extensive body of existing legislation authorizing and governing the payment of compensation for service-connected disability or death to persons who served in the military, naval, or air force of the United States during a period of war, armed conflict, or peacetime service, and to their widows, children, and dependent parents. It would provide the same sort of consolidation of the laws relating to pension, hospitalization, medical and domiciliary care, and burial benefits.
 

 H.R.Rep. No. 85-279, at 2, 1957 U.S.C.C.A.N. at 1214-15; S.Rep. No. 85-332, at 1-2, 1957 U.S.C.C.A.N. at 1242.
 

 Pointedly, the two congressional reports did not stop with merely characterizing the Act generally as preserving current benefit provisions; instead, they both made specific reference to the adapted housing and automobile benefits provided to veterans and explained that the new Act had “incorporate^ the provisions of existing law relating to the ancillary benefits of financial assistance for specially ad[a]pted housing and automobiles for certain disabled veterans.” H.R.Rep. No. 85-279, at
 
 *1382
 
 2, 1957 U.S.C.C.A.N. at 1215; S.Rep. No. 85-332, at 2, 1957 U.S.C.C.A.N. at 1242. The reports listed seven substantive changes that the 1957 Act was intended to effect; none of those changes involved veterans disabled by VA medical care, the specially adapted housing benefit, or distinctions between service-connected and non-service-connected disabilities. See H.R.Rep. No. 85-279, at 2-3, 1957 U.S.C.C.A.N. at 1215-16; S.Rep. No. 85-332, at 2-3, 1957 U.S.C.C.A.N. at 1242-43. All other changes, the two committees explained, “fall into the general categories of clerical, typographical, and clarification amendments. There is no intent on the part of the committee to incorporate changes other than on the basis indicated.” H.R.Rep. No. 85-279, at 5, 1957 U.S.C.C.A.N. at 1218; S.Rep. No. 85-332, at 15,1957 U.S.C.C.A.N. at 1254.
 

 The sponsors and other supporters of the bill that became the 1957 Act made the same points during the brief floor debates.
 
 See
 
 103 Cong. Rec. 4914 (1957) (statement of Rep. Teague) (the 1957 Act would “incorporate the provisions of existing law relating to the ancillary benefits of financial assistance for specially ad[a]pted housing and automobiles for certain disabled veterans.... The bill ... does not adversely affect the basic entitlement of any veteran or dependent presently on the compensation or pension rolls”);
 
 id.
 
 at 4915 (statement of Rep. Shuford) (the bill “does not seek to enlarge the field of benefits; nor to restrict it.”);
 
 id.
 
 at 4916 (statement of Rep. Adair) (the bill “is not designed particularly to change the substance of [the existing] laws, but merely to put them in better form.”);
 
 id.
 
 at 8176 (statement of Sen. Byrd) (“The bill does not adversely affect the entitlement of any veteran or dependent presently on the compensation or pension rolls.”). In response to a question from another senator whether the bill “in any way reduce[s] the amounts paid to veteran, the members of their families, or survivors,” Senator Byrd responded, “No; there is a slight liberalization.”
 
 Id.
 
 at 8176.
 

 From the statements made in the House and Senate reports and in the floor debates, it is clear that Congress did not intend to withdraw the previously available housing benefit from veterans in Mr. Kilpatrick’s position. Our conclusion in this regard is supported by the venerable principle that it is improper to interpret a codification statute as making a substantive change in the law absent a clear indication in the legislative history.
 
 See Muniz v. Hoffman,
 
 422 U.S. 454, 470, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975);
 
 Foureo Glass Co. v. Transmirra Corp.,
 
 353 U.S. 222, 227, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957);
 
 United States v. Ryder,
 
 110 U.S. 729, 740, 4 S.Ct. 196, 28 L.Ed. 308 (1884). Indeed, in a case presenting an analogous issue, the Supreme Court almost a century ago rejected the suggestion that a substantive change was effected by a recodification statute that separated into two provisions what had previously been found in one. In that case,
 
 Anderson v. Pacific Coast Steamship Co.,
 
 225 U.S. 187, 198-99, 32 S.Ct. 626, 56 L.Ed. 1047 (1912), the Court wrote:
 

 The change of arrangement, which placed portions of what was originally a single section in two separated sections cannot be regarded as altering the scope and purpose of the enactment. For it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.
 

 That principle is directly applicable here: The 1957 codification moved the provision granting specially adapted housing benefits from section 701(g), where it was clearly provided to veterans disabled as a
 
 *1383
 
 result of VA medical and surgical procedures, to a separate section, where the entitlement was not as clear. We conclude that the 1957 codification should not be interpreted as making a substantive change in eligibility for specially adapted housing benefits, both because of the express congressional statements of intention not to change the pre-1957 law regarding those benefits and because of the general principle that codification statutes are not to be interpreted as making substantive changes in the law absent a clear statement of intent to do so. Accordingly, we decline the government’s invitation to read the language of the 1957 Act restrietively by limiting specially adapted housing benefits to veterans with service-connected disabilities. Instead, we interpret the 1957 Act to provide that veterans who were disabled by VA medical or surgical procedures were entitled to specially adapted housing benefits because they were entitled to the compensation that was provided under the Act for “permanent and total service-connected disability due to the loss, or loss of use ... of both lower extremities.”
 

 Title 38 was reorganized and enacted into positive law in 1958,
 
 see
 
 Pub.L. No. 85-857, 72 Stat. 1105, but no material change (other than numbering) was made to the sections pertaining to specially adapted housing benefits for veterans disabled in the course of VA medical and surgical treatment. Since then, various sections of title 38 have been amended numerous times, but the two provisions at the heart of this case have remained essentially unchanged with regard to the issue presented here.
 
 Compare
 
 38 U.S.C. §§ 2351, 2601 (Supp. V 1957),
 
 and
 
 38 U.S.C. §§ 351, 801 (1958),
 
 with
 
 38 U.S.C. §§ 1151, 2101(a) (2000). Throughout the various changes, Congress has given no indication of any intention to disturb the historical eligibility of veterans disabled by VA medical treatment for the housing benefit that was conferred when the benefit was inaugurated in 1948.
 

 The government cites the many changes in the statute and notes the absence of any mention, in the various enactments and their legislative history, of the eligibility of veterans injured by VA medical treatment for specially adapted housing benefits. That silence, according to the government, indicates that Congress had no intention to confer such benefits on persons in Mr. Kilpatrick’s position. Yet on this issue, as on many other legal matters, where you end up depends on where you begin. If Congress intended from the outset to extend specially adapted housing benefits to veterans disabled as a result of VA medical and surgical procedures, as we conclude, then Congress’s decision not to alter the regime of compensation for such persons, either in 1957 or in subsequent decades, supports Mr. Kilpatrick’s interpretation of the statutory scheme, not the government’s.
 

 B
 

 The government briefly argues that the benefits provided by chapter 17 of title 38, which include hospital, nursing home, domiciliary, and medical care benefits, are not available to veterans injured by VA medical treatment on the same basis as they are to veterans with service-connected disabilities. According to the government, that distinction supports the government’s proposition that, outside of the benefits of chapter 11 and chapter 13, veterans with service-connected disabilities are treated differently from veterans with disabilities resulting from VA medical treatment.
 

 It is not necessary to decide whether the government is right that chapter 17 distinguishes between those two classes of dis
 
 *1384
 
 abled veterans, a matter that is not free from doubt. It is enough to note that the language and statutory background of the benefit provisions of chapter 17 are quite different from the language and background of sections 1151 and 2101(a). Therefore, regardless of how it is construed, chapter 17 provides no useful guidance as to the proper construction of the statutory provisions at issue in this case.
 

 C
 

 In the alternative, the government argues that to the extent there is ambiguity as to the meaning of section 2101(a), the Veterans Court should have deferred to the DVA’s interpretation of that statute, as reflected in 38 C.F.R. § 3.809, the regulation that addresses claims for specially adapted housing benefits for disabled veterans under section 2101(a). That regulation interprets the statute to provide benefits only to veterans whose disabilities were “incurred or aggravated as the result of service.” 38 C.F.R. § 3.809(b).
 

 In arguing for deference to the agency regulation, the government invokes the
 
 Chevron
 
 doctrine,
 
 see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,
 
 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In
 
 Chevron,
 
 the Supreme Court instructed us that when determining whether to defer to an agency’s regulations construing a statute that the agency is charged with administering, we must first ask “whether Congress has directly spoken to the precise question at issue.”
 
 Id.
 
 at 842, 104 S.Ct. 2778. If so, we (and the agency) “must give effect to the unambiguously expressed intent of Congress.”
 
 Id.
 
 at 843, 104 S.Ct. 2778. If Congress has not spoken directly on the issue, we must defer to the agency’s statutory interpretation, as long as that interpretation “is based on a permissible construction of the statute.”
 
 Id.
 

 The Court in
 
 Chevron
 
 explained that in determining whether Congress has directly spoken to the point at issue, a court should attempt to discern congressional intent either from the plain language of the statute or, if necessary, by resort to the applicable tools of statutory construction: “If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.”
 
 Chevron,
 
 467 U.S. at 843 n. 9, 845, 104 S.Ct. 2778. In subsequent cases, both the Supreme Court and this court have reiterated that point.
 
 See INS v. St. Cyr,
 
 533 U.S. 289, 321 n. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (“We only defer ... to agency interpretations of statutes that, applying the normal ‘tools of statutory construction,’ are ambiguous.”);
 
 INS v. Cardoza-Fonseca,
 
 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (finding statutory meaning clear upon considering “ordinary canons of statutory construction,” including the statute’s legislative history);
 
 Japan Whaling Ass’n v. Am. Cetacean Soc’y,
 
 478 U.S. 221, 233, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) (if a statute is silent, the Court defers to administrative construction “unless the legislative history of the enactment shows with sufficient clarity that the agency construction is contrary to the will of Congress”);
 
 Turtle Island Restoration Network v. Evans,
 
 284 F.3d 1282, 1297 (Fed.Cir.2002) (“Because we find that the combination of plain language, legislative history, and comparison with other statutory provisions decisively establishes the meaning of section 609(b),” there is no need to defer to the agency’s interpretation of the statute.);
 
 Delverde, SrL v. United States,
 
 202 F.3d 1360, 1363 (Fed.Cir.2000) (“[T]o determine if Congress’s purpose and intent on the question at issue is judicially ascertainable ... we examine
 
 *1385
 
 the statute’s text, structure, and legislative history, and apply the relevant canons of interpretation.”);
 
 Timex V.I., Inc. v. United States,
 
 157 F.3d 879, 882 (Fed.Cir.1998) (“If ... the statute’s text does not explicitly address the precise question, we do not at that point simply defer to the agency. Our search for Congress’s intent must be more thorough than that.”);
 
 Muwwakkil v. Office of Pers. Mgmt.,
 
 18 F.3d 921, 925 (Fed.Cir.1994) (“When an agency’s interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference.”);
 
 see also EEOC v. Arabian Am. Oil Co.,
 
 499 U.S. 244, 260, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (Scalia, J., concurring) (“[D]eference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ.”).
 

 Based on the evolution of the pertinent veterans benefits statutes and the applicable principles of statutory construction, we have concluded that section 2101(a) has a clearly defined meaning that is contrary to the meaning that the government urges upon us. Accordingly, we decline to defer to the DVA regulation that applies the statutory language restrictively, but instead construe the statute as we believe Congress clearly intended.
 
 See Brown v. Gardner,
 
 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (refusing
 
 Chevron
 
 deference to the DVA’s longstanding interpretation of the same statute that is at issue in this case, 38 U.S.C. § 1151).
 

 Ill
 

 In sum, while we conclude — contrary to the submissions of both parties — that the plain language of section 2101(a) does not answer this case, we are persuaded by an examination of the historical background of section 2101(a) that Congress directly addressed the issue presented in this case and intended for persons disabled by VA medical or surgical treatment, such as Mr. Kilpatrick, to be eligible for specially adapted housing benefits under that section. For that reason, we uphold the ruling of the Veterans Court that Mr. Kilpatrick is eligible for benefits under 38 U.S.C. § 2101(a) in the same manner as if his disability were service-connected.
 

 AFFIRMED.