# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-3221

DAVID L. HORNICK, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 26, 2010                                        Decided August 20, 2010)

*Michael P. Horan*, of Washington, D.C., for the appellant.

*Yvette R. White*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, HAGEL, and MOORMAN, *Judges*.

GREENE, *Judge*:  Veteran David L. Hornick appeals, through counsel, a September 15, 2008, decision of the Board of Veterans' Appeals (Board) that determined that it was proper for a VA regional office (RO) to sever his May 1996 award of VA compensation benefits under 38 U.S.C. § 1151.  Mr. Hornick seeks reversal, arguing, inter alia, that VA erred in severing his award of section 1151 compensation benefits because, under 38 U.S.C. § 1159, that award was protected because it had been in force for more than ten years.  The Secretary responds that the Board was bound by General Counsel Precedent Opinion 13-96 [hereinafter G.C. Prec. 13-96], which determined that the section 1159 protection of service connection does not extend to protect disabilities compensated under section 1151.  For the reasons set forth below, we will reverse the September 2008 Board decision and remand the matter for proceedings consistent with this opinion.

## I. BACKGROUND

In May 1996, the RO awarded Mr. Hornick section 1151 compensation benefits for residuals of a low-back injury, effective September 16, 1994. R. at 739-40. The decision reflects that on March 15, 1991, Mr. Hornick was injured while "sitting at the VA Medical Center [(VAMC)]" when the bench that he was sitting on "broke causing him to be caught in the wrought iron frame with split wood around his body." R. at 739. At that time, the RO determined that Mr. Hornick's residuals of a low-back injury "resulted from VA hospitalization, medical, or surgical treatment." *Id.* It is not disputed that the injury occurred while the veteran was waiting outside of the dental clinic at the Indianapolis, Indiana, VAMC.

In February 1997, the RO found Mr. Hornick to be totally disabled as a result of his March 1991 low-back injury and increased his disability rating from 40% to 100%, effective September 16, 1994. R. at 639. The RO also awarded him special monthly compensation (SMC) benefits "based on paralysis of both lower extremities [and] loss of bowel and bladder control," effective September 16, 1994. R. at 642.

In November 2005, the RO proposed to sever Mr. Hornick's section 1151 benefits. R. at 334-39. The RO noted that Mr. Hornick's March 1991 injury was incurred while he was "outside the VA Dental Clinic" and thus determined that "[a] clear and unmistakable error [(CUE)] was made" in awarding him section 1151 compensation benefits "based on an injury which did not result from examination or hospital care or treatment." R. at 337 (citing *Sweitzer v. Brown*, 5 Vet.App. 503 (1993)). In January 2006, VA notified Mr. Hornick that his award of VA compensation under section 1151 was severed because there was CUE in the decision granting entitlement to that benefit. R. at 317-20. Mr. Hornick appealed that decision to the Board and, in September 2008, the Board determined that the RO properly severed Mr. Hornick's section 1151 benefits. As part of its decision, the Board considered the applicability of 38 U.S.C. § 1159, which provides that "[s]ervice connection for any disability . . . which has been in force for ten or more years shall not be severed . . . except upon a showing that the original grant of service connection was based on fraud." 38 U.S.C. § 1159. The Board, relying on G.C. Prec. 13-96, found that the section 1159 protection did not extend to awards of compensation benefits under section 1151 and, therefore, the RO was not procedurally prohibited from severing Mr. Hornick's section 1151 compensation benefits.

2

## II. APPLICABLE LAW AND ANALYSIS

### A. Statutory Scheme

"As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). The meaning of a statutory word or phrase cannot be determined in isolation, but must be drawn from the context in which it is used. *See Holloway v. United States*, 526 U.S. 1, 6 (1999) ("In interpreting the statute at issue, '[w]e consider not only the bare meaning' of the critical word or phrase 'but also its placement and purpose in the statutory scheme.'") (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (finding no limit on length of military service after which a member of the Armed Services might retain a right to re-employment, where it could be inferred that no such limit was implied from other provisions in the same statute that contained such limits) (citations omitted). Thus, the plain meaning of any statutory provision must be determined in light of the statutory scheme as a whole, the specific context in which the word or provision at issue is used, and the broader context of the statute as a whole. *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) ("When 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statutes (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.'" (quoting *Brown v. Duchesne*, 60 U.S. 183, 194 (1857))).

"Chapter 11 of title 38, U.S. Code, governs claims for compensation by veterans for their service-connected disabilities." *DeBeaord v. Principi*, 18 Vet.App. 357, 363 (2004). "The basic purpose of the chapter 11 compensation provisions is to recompense veterans for conditions that are a result of or arise during their service." *Id.* at 364; *see* 38 U.S.C. § 1110 ("For disability resulting from personal injury suffered or disease contracted in line of duty . . . the United States will pay to any veteran thus disabled . . . compensation as provided in this subchapter."); 38 U.S.C. § 1131 (providing same for peacetime service); VA Form 21-526 ("Veteran's Application for Compensation and/or Pension").

Both statutory provisions at issue in this appeal–38 U.S.C. §§ 1151 and 1159–are contained within subchapter VI of chapter 11, entitled "General Compensation Provisions." At the time Mr. Hornick was awarded compensation under section 1151, that statute provided:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Secretary, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title *shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.*

38 U.S.C. § 1151 (emphasis added). Section 1159 provides, in pertinent part, that:

> Service connection for any disability or death granted under this title which has been in force for ten or more years shall not be severed on or after January 1, 1962, except upon a showing that the original grant of service connection was based on fraud or it is clearly shown from military records that the person concerned did not have the requisite service or character of discharge.

38 U.S.C. § 1159.

### B. Standard of Review

Precedent opinions "constitute a body of experience and informed judgment" on the part of VA. *Osman v. Peake,* 22 Vet.App. 252, 256 (2008); *see Skidmore v. Swift,* 323 U.S. 134, 140 (1944). Therefore, the Board is "bound in its decisions by the . . . precedent opinions of the chief legal officer of the Department." 38 U.S.C. § 7104(c). Although the Board is bound by the precedent opinions issued by the VA General Counsel, this Court is not. *Hatch v. Principi,* 18 Vet.App. 527, 531 (2004); *Sabonis v. Brown,* 6 Vet.App. 426, 429 (1994). Therefore, the issue of whether section 1159 applies to protect awards of compensation made under section 1151 is one of first impression for the Court. *See DeBeaord, supra* (Court reviews VA's statutory interpretation de novo). Our review is guided by the United States Supreme Court's mandate that, when interpreting veterans benefits statutes, interpretive doubt is to be resolved in favor of the veteran. *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994). Finally, the degree to which an agency's interpretations of ambiguous statutes are given deference "will depend upon the thoroughness evident in its

4

consideration, the validity of its reasoning, . . . and all those factors which give it power to persuade." *Skidmore,* 323 U.S. at 140.

Here, the agency interpretation of section 1159 was the basis for the Board's decision in this matter; thus, the Court "must determine whether that interpretation," as set forth in G.C. Prec. 13-96, "is a correct statement of relevant law." *Osman v. Peake*, 22 Vet.App. 252, 256 (2008). "A rejection of the VA General Counsel opinion that the Board decision found determinative necessarily requires the rejection of the Board decision itself." *Id.*

### C. VA General Counsel Precedent Opinion 13-96

In November 1996, the VA General Counsel issued a precedent opinion deciding the precise question now before the Court: "Does the protection of service connection provided by 38 U.S.C. § 1159 apply to disabilities compensated under 38 U.S.C. § 1151." G.C. Prec. 13-96. The VA General Counsel determined that the section 1159 protection of service connection is not applicable to disabilities compensated under section 1151. The General Counsel reasoned that, because section 1159 neither authorizes awards of compensation nor prescribes the manner in which payments are made, but rather pertains to the factual determination of service connection, section 1159 does not protect compensation paid under section 1151.

### D. 38 U.S.C. § 1151

#### 1. Caselaw

The Court has had several opportunities to consider the question of what ancillary benefits are available to veterans based on an award of compensation under section 1151. In *Mintz v. Brown*, 6 Vet.App. 277 (1994), the Court found that a widow of a veteran awarded section 1151 compensation was not entitled to Chapter 23 benefits for burial costs. The Court stated that "a determination of 'as if' service connection under [section] 1151 may create entitlement to benefits under chapters 11 and 13, but not to benefits under chapter 23." *Id.* at 283.

In *Kilpatrick v. Principi*, the Court found that a veteran awarded section 1151 compensation was entitled to specially adapted housing and a special home adaption benefit under 38 U.S.C. § 2101(a). 16 Vet.App. 1, 6 (2002), *aff'd*, 327 F.3d 1375 (Fed. Cir. 2003). The Court distinguished *Mintz* on the grounds that section 2101(a) authorized the Secretary "to assist any veteran who is entitled to compensation under chapter 11" for a permanent and total service-connected disability,

whereas section 2307 (the burial benefits statute at issue in *Mintz*) "awards benefits for 'a veteran who dies as the result of service-connected disability.'" *Id.* at 5 (quoting 38 U.S.C. § 2307). The Court found determinative the statutory eligibility criteria for the ancillary benefit the veteran was seeking, noting that "by its very terms, section 1151 relates only to the award of ***compensation*** under chapters 11 and 13." *Id.* On appeal, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) affirmed this Court's decision, but rejected its reasoning that because Mr. Kilpatrick "was entitled to compensation under chapter 11, and the chapter 11 compensation to which he was entitled, pursuant to section 1151, was the same as that awarded to veterans with permanent and total service-connected disabilities," he was therefore entitled to chapter 21 housing benefits. *Kilpatrick,* 327 F.3d at 1380. The Federal Circuit examined the legislative history of section 1151 and historical background of section 2101(a) to conclude that Congress' intent had always been to make available special adaptive housing benefits to veterans receiving section 1151 compensation benefits. *Id.* at 1383 ("[W]e interpret the 1957 Act to provide that veterans who were disabled by VA medical or surgical procedures were entitled to specially adapted housing benefits because they were entitled to the compensation that was provided under the Act for 'permanent and total service-connected disability due to the loss, or loss of use . . . of both lower extremities.'").

In *Alleman v. Principi*, this Court considered whether a veteran qualified for chapter 19 life insurance benefits based on his receipt of section 1151 compensation. 16 Vet.App. 253 (2002), *aff'd*, 349 F.3d 1368 (Fed. Cir. 2003). The Court determined that a veteran receiving section 1151 compensation was not eligible for Service Disabled Veterans' Insurance (SDVI) because 38 U.S.C. § 1922(a) requires that a veteran apply for the benefit "within two years of being awarded service connection for a disability." *Id.* at 257. On appeal to the Federal Circuit, Mr. Alleman argued that the definition of compensation set forth in 38 U.S.C. § 101(13) requires a finding of service connection before any disability compensation may be made. The Federal Circuit rejected this argument, stating that "[s]ection 1151 does not redefine 'service-connected,'" but rather "provides an exception that grants compensation for some non-service-connected disabilities, treating those disabilities for some purposes 'as if' they were service-connected." *Alleman*, 349 F.3d at 1370-71.

6

*2. Legislative History*

From the cases dealing with section 1151, it is apparent that the legislative history is as important as the statutory text when determining what ancillary benefits a veteran is entitled to once an award of section 1151 compensation has been made. The legislative history of section 1151 reveals that the statute was first enacted as section 213 of the World War Veterans' Act of 1924, Pub. L. No. 68-242, § 213, 43 Stat. 607, 623. It provided that the compensation benefits of title II of the 1924 Act would be awarded to those World War I veterans who were injured or whose existing injuries were aggravated "as the result of training, hospitalization, or medical or surgical treatment." *Id.* The benefits of title II were to be provided to section 213 veterans "in the same manner as though such disability, aggravation, or death was the result of military service during the World War." *Id.* Testimony preceding the passage of the 1924 Act established the drafters' intent to compensate disabled veterans who suffered a harm that was not service connected to ensure that veterans were receiving all benefits to which they were entitled. *See* Hearings before the House Committee on World War Veterans' Legislation, 68th Cong., 1st Sess. 113 (1924) ("If, in the course of vocational training, the trainee is injured without fault of his own as a result of one of the occupational hazards of the training, there is at present no authority to compensate him for that disability which, of course, has no direct service connection.").

Section 213 of the 1924 Act was repealed in 1933 and replaced in 1934 by a similar statute that applied to veterans generally, not solely veterans of World War I. *See* Pub. L. No. 73-141, § 31, 48 Stat. 509, 526 (1934). The new statute provided that specified compensation benefits would be awarded to persons who suffered an injury or aggravation of an existing injury as the result of training, hospitalization, or medical or surgical treatment provided pursuant to the veterans benefit laws "in the same manner as if such disability, aggravation, or death were service connected within the meaning of such laws." *Id*.

E. Relationship between 38 U.S.C. §§ 1151 and 1159

Initially, we observe that an award of compensation under section 1151 is not an award of service connection. As the Federal Circuit stated in *Alleman,* "[s]ection 1151 does not accord service-connected status to a veteran's disability or death, but rather provides that in certain instances a veteran's disability or death will be treated '*as if*' it were service-connected for certain purposes."

7

349 F.3d at 1370 (emphasis added). Mr. Hornick similarly recognizes that the award of section 1151 benefits does not bestow upon him service-connected status; he asserts, however, that because section 1151 requires VA to treat disabilities compensated under that section "as if" they were service connected, section 1159 prevents VA from severing that award of benefits once it has been in place for a period of 10 years. Mr. Hornick argues that "Congress' use in § 1151 of the statutorily defined term 'service-connected' . . . . manifested a clear intent to provide § 1151 disabled veterans with the very same legal protection that are available to service-connected veterans." Appellant's Brief at 24.

As stated above, section 1159 protects determinations of service connection that have been in effect for 10 years or more. In enacting the provisions currently codified in section 1159, Congress explained that the legislation "merely freezes the determination of service connection, that is to say the finding by the Veterans' Administration that the disability was incurred in or aggravated by military service." S. Rep. No. 1394, 86ᵗʰ Cong., 2d Sess. 1 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2238. Congress noted that the statute "does not freeze the percentage rating which represents the degree of the disability and governs the amount of compensation payable therefor." *Id.* At the time of the enactment of section 1159, section 1151 was in effect.

On its face, the use of the term "service connection" in section 1159 would seem, upon preliminary review, to exclude section 1151 compensation recipients from its protection, because that statute provides only compensation, not service connection. But, through its language, Congress has clearly stated its intent that beneficiaries of section 1151 compensation are to have their disabilities treated "as if" they were service connected. Because both section 1111 and 1159 are contained in title 38 under the subchapter dealing with general compensation provisions, it would violate proper statutory construction to conclude that these sections are not part of a harmonious whole and that thus the protection afforded by section 1159 would not apply to those individuals receiving section 1151 compensation benefits. *See Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992))). To conclude otherwise would be inconsistent with the statutory scheme of chapter 11, the purpose of which is to provide disabled veterans with

8

compensation and, under certain circumstances, to protect the basis for that compensation. *See DeBeaord, supra.* Moreover, as the Supreme Court held in *Gardner*, if a statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Gardner*, 513 U.S. at 118.

Further, as originally introduced, House Bill 113, which led to the present-day section 1159, provided that "a service connection which has been made for compensation, pension, or insurance purposes under law administered by the Veterans' Administration, and which has been in force for ten or more years, shall not be severed thereafter unless on a showing that the rating originally granting service connection was based on fraud." Hearings on the bill were held before the Subcommittee on Compensation and Pension and comments made during those hearings prompted the revision of House Bill 113 and enactment of the statute as it reads today. VA noted its objection to the original text of the bill, stating that the use of the word "compensation" raises a question "whether the bill would apply to 'dependency and indemnity compensation.'" Letter from Deputy Administrator Bradford Morse to Chairman Olin Teague (July 24, 1959), *reprinted in* H.R. Rep. No. 1529, 86th Cong., 2d Sess. (1960). VA also objected to the inclusion of pension in the statute because "[s]ervice connection is not relevant to the payment of non-service-connected disability pension to war veterans or of non-service-connected death pension to widows and children of veterans of World War I and prior years." *Id.* Finally, VA noted that the bill erroneously "assumes that there is a basic relationship between service connection and the benefit of insurance." *Id.*

Nothing in these statements indicates that the text of the statute as originally introduced, which suggests that the purpose of the statute was to protect the payment of compensation that veterans had come to rely upon, was revised to exclude beneficiaries of section 1151 compensation from the protection of section 1159. Thus, we hold that the section 1159 protection from severance of awards of "service connection" in effect for 10 or more years also extends to awards of compensation under section 1151 that have been in effect for 10 or more years. We conclude that this holding is in harmony with the statutory scheme and the general purposes of chapter 11 and of title 38.[1] Accordingly, for the reasons stated above, we reject G.C. Prec. 13-96, which determined

---

[1] In keeping with the statutory scheme, VA compensation benefits awarded under 38 U.S.C. § 1151 still may be severed under 38 U.S.C. § 1159 if it is shown that "the original grant was based on fraud or it is clearly shown from military records that the person concerned did not have the requisite service or character of discharge." 38 U.S.C. § 1159.

that the section 1159 protection does not apply to awards of compensation under section 1151. Consequently, we reverse the Board's decision that relied on that opinion and remand the matter for action consistent with this opinion.[2] *See Hensley v. West,* 212 F.3d 1255, 1263 (Fed. Cir. 2000) (holding that Court may reverse an incorrect judgment of law that is based upon proper factual findings, provided that it does "'not simply [make] factual findings on its own.'") (quoting *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714 (1986)).

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the September 15, 2008, Board decision is REVERSED and the matter is REMANDED for the Board to reinstate Mr. Hornick's section 1151 compensation benefits and any other awards flowing therefrom.

---

[2] We note, of course, that the Board was bound by the VA General Counsel's opinion in reaching its decision. *See* 38 U.S.C. § 7104(c). The Board's decision, however, is erroneous because the General Counsel's opinion misstates the law.