**MT. VERNON COOPERATIVE BANK, Plaintiff, Appellant,**

v.

**John F. GLEASON, Administrator of Veterans Affairs, Defendant, Appellee.**

**No. 6736.**

United States Court of Appeals
First Circuit.

Oct. 19, 1966.

---

Timothy H. Donohue, Boston, Mass., with whom Karl J. Hirshman and Sherburne, Powers & Needham, Boston, Mass., were on brief, for appellant.

Robert V. Zener, Atty., Dept. of Justice, with whom John W. Douglas, Asst. Atty. Gen., Paul F. Markham, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge. McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This action, removed to the district court, seeks a declaratory judgment that defendant Administrator may not recover, on the ground that the appropriate papers were forged by an interloper, a payment made to a bank under a Veterans Administration guaranty of a veteran's home loan.

Henry Alfred Hopkins and a female companion, representing themselves to be a veteran named Harry Gilmore and his wife Charlie, applied to the appellant bank for an $11,000 home mortgage loan. They presented stolen discharge papers made out to Gilmore and a certificate of eligibility for guaranty made out by the defendant. The bank procured a credit inquiry which erroneously reported that "Gilmore" was then working at an auto body shop and had been for fourteen months.[1] "Gilmore" signed the bank's loan application, which contained the usual condition permitting the bank to withdraw from the transaction "if other transactions develop facts respecting the security or the responsibility of the applicant unsatisfactory to the bank", and the bank forwarded the papers to the defendant with a request that the defendant issue a loan guaranty certificate. On the guaranty application form the bank's treasurer subscribed to the printed statement that "All information reflected in this application is true to the best of my knowledge and belief."

The defendant thereupon issued the requested loan guaranty certificate, committing the Administration to guarantee sixty per cent of the bank's loan to Gilmore, and the bank completed the loan. Both parties to this action acted completely in good faith, without suspecting the forgery. After three payments, Hopkins-Gilmore defaulted.[2] The bank foreclosed a year later, and the Administration paid its share of the loss. Three years later the Administration discovered the forgery and claimed recovery of the amount it had paid. The bank refused, and the Administration finally set off part of the amount claimed against an unrelated debt due the bank on another loan guaranty. The bank then brought this action, which was tried on a stipulation of the above facts.

---

1. The credit report also contained the cryptic notation, "GI Insurance—Unable to clear."

2. He was ultimately located as an inmate of the Ohio State Penitentiary.

The relevant statute and regulation are set forth in the margin.[3] The district court denied plaintiff's motion for summary judgment and entered judgment for the defendant.

We start with the proposition that in the absence of a statute, the government would be entitled to sue for the recovery of a payment made by mistake. Wisconsin Central R. R. v. United States, 1896, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399. This would be the case even if the payment resulted from the carelessness of a government official. Cabel v. United States, 1 Cir., 1940, 113 F.2d 998. In such a case, where the disbursement of public funds is concerned, the government is not under the obligation of showing either that the recipient was unjustly enriched or that the balance of equities otherwise lies in its favor. The several cases cited by the appellant are not persuasive, either because no loss resulted to the public purse or because the court did not consider the right of the government to recovery.[4]

In the instant case, the purpose of the guaranty given by the defendant was to underwrite a loan for a veteran. Because of the forgery this purpose was not realized. Because the mortgagor was not an eligible veteran, it is clear that the Administration would not have been legally obliged to pay, and that the payment was made only because of an erroneous understanding of the facts. To refer to the situation in Cabel v. United States, supra, it is as if the government made refunds on merchandise to meet a supposed obligation which did not in fact exist.

This brings us to the question whether the statute and the implementing regulation, 38 U.S.C. § 1821; 38 C.F.R. § 36.-4325(a), supra note 3, limit the Administration's affirmative right of recovery or the equivalent right to recovery via set-off. As the whole statute indicates, the first sentence of section 1821, the incontestability provision, concerns only the Administration's certificate that a particular veteran is eligible for a guar-

---

3. 38 U.S.C. § 1821. Incontestability.

"Any evidence of guaranty or insurance issued by the Administrator shall be conclusive evidence of the eligibility of the loan for guaranty or insurance under the provisions of this chapter and of the amount of such guaranty or insurance. Nothing in this section shall preclude the Administrator from establishing, as against the original lender, defenses based on fraud or material misrepresentation. The Administrator shall not, by reason of anything contained in this section, be barred from establishing, by regulations in force at the date of such issuance or disbursement, whichever is the earlier, partial defenses to the amount payable on the guaranty or insurance."

38 C.F.R. § 36.4325. Partial or total loss of guaranty or insurance.

"(a) Subject to the incontestable provisions of 38 U.S.C. 1821 as to loans guaranteed or insured on or subsequent to July 1, 1948, there shall be no liability on account of a guaranty or insurance, or any certificate or other evidence thereof, with respect to a transaction in which a signature to the note, the mortgage, or any other loan papers, or the application for guaranty or insurance is a forgery; or in which the certificate of discharge or the certificate of eligibility is counter-

feited, or falsified, or is not issued by the Government."

4. In McKnight v. United States, 1878, 98 U.S. 179, 25 L.Ed. 115, the government paid a sum to its creditor's assignee. Upon suit by the assignee on another claim, the government was not allowed to counterclaim on the ground that the assignment had been invalid in law. The Court pointed out that the original creditor had given a valid receipt, and that there was no danger of a double recovery against the government. In In re South Shore Co-op. Ass'n, 2 Cir., 1939, 103 F. 2d 336, the claimants were private persons, not the government, seeking to recover money paid to a trustee in bankruptcy under an alleged mistake of law. In United States v. Hart, 3 Cir., 1937, 90 F.2d 987, the government sought to recover from a legatee a tax refund erroneously paid to the testator's estate. The court overlooked the cases concerning the government's right of recovery and relied on cases involving only private persons. It emphasized that recovery was being sought from a person other than the one to whom the sum had been paid, and that any money traceable to the tax refund had been paid to the legatee legally, by order of court.

anty and that his avowed purpose in seeking the loan comes within the permitted statutory purposes, and that he is entitled to a specified maximum amount. For example, section 1802 sets forth the circumstances under which a veteran is entitled to the guaranty and criteria for computing the amount of guaranty available; sections 1810, 1812, and 1813 deal with the authorized purposes, such as purchase of a home, farm, or business property. Records available to the Administration enable it to check on all three requirements.

The thrust of plaintiff's argument is that the first sentence is not limited to the formal application of the three criteria stated, but that the conclusive effect of a guaranty is subject only to the language of the second and third sentences of section 1821—the statutory "defenses" of fraud and material misrepresentation and the "partial defenses" which may be established by regulation. Plaintiff further argues that regulation 36.4325(a) goes beyond the statute in providing that "there shall be no liability" and that even this language provides no basis for affirmative recovery or set-off. Finally, plaintiff cites 38 C.F.R. § 36.4325(c), which specifically gives a right of recovery to the government when a lender has been guilty of misrepresentation and fraud, to suggest that the Administrator has officially recognized the difference between avoidance of liability on a fraudulently obtained instrument and affirmative recovery. In short, plaintiff argues that the government has bound itself to treat a loan guaranty according to the generally accepted law of negotiable instruments, under which payment is final even if the payor might have raised valid defenses. Cf. Price v. Neal, K.B., 1762, 3 Burr. 1354, 97 Eng.Rep. 871; UCC (1962 ed.) § 3–418.

While some portions of the regulations might have been more skillfully drawn than others, we cannot lightly infer a restriction on a prior right of the government, unless " * * * Congress has 'clearly manifested its intention' to raise a statutory barrier." United States v. Wurts, 1938, 303 U.S. 414, 416, 58 S.Ct. 637, 638, 82 L.Ed. 932. That the defendant has consistently interpreted the regulation to justify recovery after payment as well as refusal to make a payment is indicated by various intra-agency legal memoranda, dating from 1950, preserved in the record here. For example, in November and December, 1950, the Loan Guaranty Officer in San Francisco was advised by his chief attorney that " * * it appears that the wife's signatures to the loan instruments were forged, and under regulation 36.4325(a) the Administration is under no liability", and was requested by the chief of the Loan Service and Claims Division to seek a refund of payment already made to the lender. Plaintiff has sought to derive comfort from a long memorandum from the office of the defendant's General Counsel devoted mainly to analysis of the Administration's liability when the signature of an unnecessary surety is forged. The inclusion in a seven-page opinion of one sentence raising a question as to the Administration's right to recover a payment made as the result of forgery in a required document is of no persuasive significance. We do not think it a strained interpretation of "there shall be no liability" to derive the right of affirmative relief.

Nor do we think that the regulation as interpreted is invalid or unsupported by the statute. Here we have not only the regular presumption of validity of a regulation, Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831, but the added weight of a regulation issued shortly after the enactment of the statute and therefore representing a contemporaneous construction of the statute by the agency responsible for its administration. Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796; Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 378, 51 S. Ct. 144, 75 L.Ed. 397. Moreover, this regulation was presented to Congress

when it reenacted title 38 in 1958 and expressly approved all regulations then in force. See Act of Sept. 2, 1958, P.L. 85–857, § 7, 72 Stat. 1105.

■ Finally, the Administrator's interpretation seems to us to be consistent with sound policy considerations. The purpose of the incontestability clause is to stimulate bank and secondary market interest in veterans' loan paper. As to the secondary purchasers, the Administration's right to recover from the original lender is irrelevant. And as to the bank, it is clear that the Administration could refuse to pay under a guaranty if a forgery were discovered even years later, but before disbursement by the government. The extension of that possibility beyond payment does not seem likely to substantially discourage acceptance of veterans' loans in either market.

From the viewpoint of administrative convenience, we think it not unfair to let the burden of ascertaining the identity of the borrower remain with the bank, where it has traditionally lain. In this case it is not without significance that the plaintiff undertook to obtain a credit report on the borrower, admittedly a sparse one, that it forwarded this report to the defendant with the certification of its responsible officer that the information as to the borrower was "true to the best of my knowledge and belief", and that its standard loan application form reserved its right to withdraw upon development of reasonable doubt as to the responsibility of the applicant. To impose the responsibility of verifying a borrower's identity upon the Veterans Administration would be to remove that function from the smaller local organizations best able to fulfill it and to transfer it to a remote and centralized bureaucracy.

Opposed to these considerations are the policy of repose embodied in the rule of Price v. Neal, supra, and the bank's interest in certainty as to the extent of its potential liabilities. The former policy has been rejected with respect to the government in the cases following Wisconsin Central R. R. v. United States, supra. As to the latter, we think the uncertainty engendered by the Administrator's position is hardly a substantial addition to the risk of forgery assumed by the bank whenever it lends money on the basis of a cursory credit inquiry or becomes the endorser on a stranger's note. See, e. g., Mass.G.L. c. 106, §§ 3–414, 3–417(2) (b). In any event, this interest is clearly subordinate to the public interest in proper expenditure of public funds.

Affirmed.