# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1334

SALLY A. BURKHART, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 24, 2018                                      Decided  January 3, 2019)

*Sean S. Twomey*, of Los Angeles, California, for the appellant.

*Mark D. Gore*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Richard A. Daley*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, GREENBERG, and ALLEN, *Judges*.

ALLEN, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

ALLEN, *Judge*: This appeal, which is timely and over which the Court has jurisdiction, *see* 38 U.S.C. §§ 7252(a), 7266(a), had its genesis when VA issued a certificate of eligibility (COE) for home loan guaranty benefits to the appellant, a veteran's surviving spouse, and retracted it years later, citing her actual ineligibility for that congressionally authorized benefit. The appellant raises three questions of law in asking us to reverse the Board of Veterans' Appeals's (Board's) March 21, 2016, decision denying eligibility for these home loan guaranty benefits. First, we address whether a veteran's surviving spouse who is entitled to dependency and indemnity compensation (DIC) under 38 U.S.C. § 1151 is also thereby entitled to ancillary home loan guaranty benefits under title 38, chapter 37. Second, we consider whether 38 U.S.C. § 3721 (which we will call the "incontestability provision") bars VA from contesting a surviving spouse's eligibility once the Agency has issued a COE before a loan is issued. Finally, we address whether the Court may use equitable principles to grant these home loan guaranty benefits and order VA to guarantee a loan by employing equitable estoppel, waiver, laches, or injunctive relief.

We hold that (1) neither section 1151 nor chapter 37 confers eligibility for home loan guaranty benefits on section 1151 beneficiaries such as the appellant; (2) the incontestability provision does not affect VA's ability to contest a person's eligibility for the home loan guaranty program before a loan is issued; and (3) equitable principles are not appropriate to grant the appellant relief in this case. Therefore, the Court will affirm the March 21, 2016, Board decision.

## I. FACTS AND PROCEDURAL HISTORY

The operative facts in this appeal are straightforward and uncontested. The appellant is the surviving spouse of U.S. Army veteran David Burkhart, who served the Nation honorably on active duty from August 1952 to July 1954 in the Korean Conflict. Record (R.) at 3, 33. Mr. Burkhart was awarded two Bronze Stars. R. at 33. He was not service connected for any disabilities during his life.

The veteran's health began to deteriorate in the late 1990s. *See, e.g.,* R. at 846-47. In September 2003, he was admitted to a VA inpatient nursing facility. R. at 362-63. The veteran died the following month while still under VA care. R. at 473-74.

After her husband's death, the appellant filed a claim for DIC benefits. R. 748-52. Her claim was based on 38 U.S.C. § 1151, which provides for compensation in connection with the death or injury of a veteran in certain circumstances while the veteran was under VA care. R. at 748. VA granted the appellant's claim in an August 2007 rating decision because it determined that the veteran's "death [while in VA care] was due to an event not reasonably foreseeable." R. at 287; *see* 38 U.S.C. § 1151(a)(1)(B). There is no indication that the cause of his death was related to a service-connected disability or that the appellant claimed service connection in connection with her husband's death.

Now we reach a critical turning point in the facts leading to this appeal. The appellant sought a COE for home loan guaranty benefits in 2007. R. at 240. These benefits are available under chapter 37 of title 38 of the U.S. Code. VA issued her a COE that same year. R. at 91, 240. She did not subsequently enter into a loan transaction with respect to the COE.

In December 2013, she again requested a determination of eligibility for a loan guaranty. R. at 90. This time, VA notified the appellant that she was not eligible for those benefits. R. at 88-89. It informed her that the 2007 COE had been "issued in error." R. at 87. The appellant notified

VA of her disagreement in December 2014. R. at 74-75. VA issued a Statement of the Case in August 2015 continuing to deny home loan guaranty benefits under chapter 37. R. at 84-86.

The appellant perfected her appeal to the Board in September 2015. R. at 54-55. The Board found, in its March 2016 decision, that the veteran had no service-connected disabilities during his lifetime. R. at 4. Nor did he die of a service-connected disability. R. at 3. Additionally, it found that the "[t]he [a]ppellant is not in receipt of [DIC] under 38 U.S.C.A. §§ 1310 or 1318." *Id.* Her entitlement to DIC benefits flowed solely from section 1151. R. at 5-6. Based on these facts, the Board denied the appellant eligibility for VA home loan guaranty benefits. R. at 7. This appeal followed.

## II. ANALYSIS

The appellant challenges the Board's decision denying her eligibility for home loan guaranty benefits, basing her principal arguments on her reading of certain provisions of title 38 of the U.S. Code. Appellant's Substitute Brief (Br.) at 6-18. As a last resort, she invokes the Court's equitable powers as grounds to reverse the Board's decision. *Id.* at 19-24. Ultimately, her arguments are not persuasive. We begin by addressing the questions of statutory interpretation and then turn to matters of equity.

### A. The Appellant's Arguments Under Title 38

Statutory interpretation is a pure question of law that we review de novo. *Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018). First, the Court considers a statute's plain language. *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012). Using the ordinary tools of statutory construction, the Court determines whether a provision's meaning is clear. *Id.* In addition, "the plain meaning of any statutory provision must be determined in light of the statutory scheme as a whole, the specific context in which the word or provision at issue is used, and the broader context of the statute as a whole." *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010). Finally, when considering benefits conferred as a result of section 1151, the caselaw suggests that legislative history may often be an important consideration in making this assessment no matter the apparent clarity of the statutory provisions. *See, e.g., Alleman v. Principi*, 349 F.3d 1368, 1371-72 (Fed. Cir. 2003) (consulting the legislative history despite finding the statute clear); *see also Kilpatrick v. Principi*, 327 F.3d 1375, 1381-82 (Fed. Cir. 2003) (consulting the legislative history after finding some ambiguity in the statute).

*1. Eligibility Under Section 1151 or Chapter 37*

Our first task is to consider whether Congress bestowed on persons in the appellant's position the home loan guaranty benefits at issue in this appeal. We begin by addressing whether it has done so under section 1151. Next, we assess whether anything in chapter 37 confers the benefit on the appellant. And finally, we explore whether the legislative history concerning these provisions supports the appellant's position.

Turning first to section 1151, that section provides that "[c]ompensation under this chapter [11] and dependency and indemnity compensation under chapter 13 of this title shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected." 38 U.S.C. § 1151(a). The keys to section 1151(a) for purposes of this case are its language "in the same manner as if . . . service-connected" and its enumeration of chapters in title 38 for which this "as if" service-connected status applies. Contrary to the appellant's arguments, section 1151(a)'s "as if" language does not redefine "service-connected" to include disabilities and deaths resulting from postservice VA medical treatment; nor does it "accord service-connected status." *Alleman*, 349 F.3d at 1370-71. Section 1151 beneficiaries may receive compensation under the enumerated chapters as they would if they were service connected, but they are not service connected. *See id.*; *Hornick*, 24 Vet.App. at 55 ("[A]n award of compensation under [section] 1151 is not an award of service connection."); *Mintz v. Brown*, 6 Vet.App. 277, 282-83 (1994). "Clearly, a veteran who has been awarded benefits under [section 1151] is not considered to have been awarded service connection for purposes of receiving all ancillary benefits offered for veterans with service-connected disabilities." *Alleman v. Principi*, 16 Vet.App. 253, 256 (2002), *aff'd*, 349 F.3d 1368 (Fed. Cir. 2003). Because of this well-settled interpretation, the appellant's arguments to the contrary are unavailing.

As for the enumerated chapters, the text in subsection (a) refers only to chapters 11 and 13. Thus, based on the plain language of subsection (a), Congress has limited section 1151 beneficiaries' entitlement to benefits to these chapters. *Mintz*, 6 Vet.App. at 282. Unless there is some separate, express congressional action extending other benefits to section 1151 beneficiaries, a person in the appellant's position is limited to benefits under chapters 11 and 13. *See Alleman*, 349 F.3d at 1371-72. The Court does not assume the inverse, that Congress extended benefits to section 1151 beneficiaries unless it manifests an express intent to exclude them. *See id.* at 1372.

But there is more to consider in section 1151. Subsection (c) lists two additional chapters, 21 and 39, for purposes of which "[a] qualifying additional disability under this section shall be treated in the same manner as if it were a service-connected disability." 38 U.S.C. § 1151(c). Chapter 37 is not listed, and neither chapter 21 nor chapter 39 concerns home loans. The absence of chapter 37 here is powerful in itself, but its absence takes on greater meaning when one considers the origins of subsection (c). Its recent addition further supports the conclusion that Congress does not intend section 1151 beneficiaries to receive chapter 37 benefits.

In 2003, the United States Court of Appeals for the Federal Circuit decided *Kilpatrick*, 327 F.3d 1375. We will discuss *Kilpatrick* in greater detail in a moment. For present purposes, it is sufficient to know that the Federal Circuit concluded there that a section 1151 beneficiary was entitled to receive specially adapted housing benefits even though those benefits were included in chapter 21, not chapters 11 and 13. 327 F.3d at 1385. We will soon explore that decision including how it applies in this case. For now, Congress's reaction to the decision is our focus. In the wake of *Kilpatrick*, Congress passed the Veterans Benefits Improvement Act of 2004. Pub. L. No. 108-454, 118 Stat. 3598 (2004). Congress amended section 1151 to add subsection (c). *Id.* § 304. The congressional record shows that Congress explicitly acknowledged the *Kilpatrick* decision when amending section 1151. 150 Cong. Rec. H9761-62 (2004). Congress added the chapter at issue in *Kilpatrick*, chapter 21, and went on to identify another chapter in title 38, chapter 39 concerning adaptation to automobiles, to which section 1151's "as if" service-connection concept applied. Congress did not add chapter 37. Congress's inaction as to chapter 37 while acting as to other chapters in title 38 strongly supports the conclusion that Congress intends to exclude section 1151 beneficiaries from those eligible for chapter 37 benefits. Congress had the opportunity to add chapter 37, but it did not.

But section 1151 merely sets the baseline; theoretically, another provision of title 38 could confer its ancillary benefits on section 1151 beneficiaries if Congress intended that result. The other place to look for such an indication of Congress's intent is the text of the ancillary benefit statute at issue, in this case the eligibility provisions of sections 3701 and 3702, title 38, U.S. Code, in chapter 37. *See Alleman*, 349 F.3d at 1371-72 (analyzing the text of the ancillary benefit statute at issue after section 1151); *Kilpatrick*, 327 F.3d at 1378-79 (analyzing chapter 21's text).

Section 3702 describes those veterans eligible for chapter 37's housing loan benefits. 38 U.S.C. § 3702(a). But the definition of "veterans" is more inclusive than one might assume. Section

3701(b)(2) states: "The term 'veteran' includes the surviving spouse of any veteran . . . who died from a service-connected disability . . . ." While the appellant assigns great weight to this definition, it does not advance her cause.

First, this definition specifically refers to a "service-connected disability." *Id.* This phrase requires service connection and is not ambiguous. *Compare Alleman*, 349 F.3d at 1371-72 (relying on the unopposed phrase "service-connected disabilities" in section 1922's legislative history to conclude that the statute required service connection and was not ambiguous), *with Kilpatrick*, 327 F.3d at 1378-79 (labeling ambiguous "any veteran who is entitled to compensation under chapter 11 of this title for permanent and total service-connected disability" because of the subtly conflicting references to both chapter 11, which casts a wider net, and service-connected disability). And it is undisputed that the appellant's husband did not die from a service-connected disability.

The appellant argues that in *Hornick* this Court construed the phrase "service-connection for death" to extend to section 1151 beneficiaries. 24 Vet.App. at 56. True enough, but the appellant ignores the significance of that phrase's placement in chapter 11, one of section 1151's enumerated chapters. *See id.* at 55-56 (construing section 1159 based on its placement in the same subchapter of title 38 as section 1151—chapter 11—to ensure a "harmonious whole" and consistency with the statutory scheme of chapter 11); *id.* at 56 ("We conclude that this holding is in harmony with the statutory scheme and the general purposes of chapter 11 and of title 38."). In sum, *Hornick* doesn't help the appellant and actually undercuts her argument.

Based on section 3701's plain language, the appellant is not eligible for chapter 37 benefits under section 3701's definition of "veteran" because her husband lacked a service-connected disability and his death was not service connected.

Even though the plain language of these statutory provisions is clear, we examine the legislative history for evidence of a relationship between section 1151 and the ancillary benefit at issue. *See Alleman*, 349 F.3d at 1371 (determining that the text requires a determination of service connection but still confirming Congress's intention via the statute's legislative history); *Kilpatrick*, 327 F.3d at 1378-79, 1381-82 (noting ambiguity in the text and consulting the legislative history for clarity). It's here that we return to *Kilpatrick*. In that case, the Federal Circuit instructed that one must consider the interplay between the various parts of title 38 to ensure that courts are faithful to Congress's intention to extend certain ancillary benefits to section 1151 beneficiaries.

As we explain, there is no interplay between chapter 37 benefits and section 1151 similar to the relationship the Federal Circuit found significant in *Kilpatrick* between section 1151 and the ancillary benefit at issue there.

*Kilpatrick* explored the relationship between section 1151 and chapter 21's specially adapted housing benefits. 327 F.3d at 1380. Section 1151's predecessor statute listed benefits available to veterans who suffered disability or death resulting from VA care, with specially adapted housing benefits among them. *Id.* Decades later, Congress reorganized what is today title 38 but failed to include the specially adapted housing benefit among those provided to the veterans who suffered disability or death resulting from VA care. *Id.* at 1380-81. Because "where you end up depends on where you begin," the Federal Circuit determined that, because Congress had expressly conferred those benefits on veterans, mere reorganization of various statutory provisions did not evince congressional intent to deprive veterans of those benefits that Congress had previously conferred. *Id.* at 1382-83. With this case in mind, we examine section 1151's and chapter 37's legislative history for evidence of a *Kilpatrick*-like relationship between the statutes, starting with section 1151's.

Congress intended The Servicemen's Readjustment Act, as the name implies, to help veterans coming home from World War II readjust to civilian life. H.R. Rep. No. 78-1418, at 2-3 (1944); S. Rep. No. 78-755, at 1-2 (1944). A key component in that Act was the VA home loan guaranty program, codified at 38 U.S.C. § 694 (1946). Pub. L. No. 78-346, §§ 500-04, 58 Stat. 284, 291 (1944). Section 694 was section 3701's predecessor. Section 1151's predecessor, section 501a, specifically enumerated benefits to which its beneficiaries were entitled. 38 U.S.C. § 501a (1946). Section 501a did not list section 3701's predecessor, section 694, among the benefits it conferred. There is no evidence in the legislative history that Congress later intended to change this relationship or, rather, lack thereof. In other words, there is nothing to suggest that the home loan guaranty benefit at issue here is like the specially adapted housing benefit at issue in *Kilpatrick*. Therefore, section 1151's legislative history does not support conferring chapter 37 benefits on its beneficiaries.

Chapter 37's legislative history likewise contains no indication that Congress intended to make section 1151 beneficiaries eligible for chapter 37 benefits. Congress amended the program in the early 1950s to extend eligibility to surviving spouses of eligible veterans who "died . . . as a result of injury or disease incurred in . . . service." Housing Act of 1950, Pub. L. No. 81-475, §

301, 64 Stat. 48, 74. If anything, this predecessor statute's language even more clearly excludes section 1151 beneficiaries than the current language does. The current language uses "service-connected" shorthand instead of writing out the definition of the current term "service-connected," as the old statute did. After a comprehensive review of section 1151's and section 3701's plain language and legislative history, the Court finds that nothing suggests that Congress intended section 1151 beneficiaries to receive chapter 37 benefits.

None of the appellant's remaining arguments sway us. The appellant identifies two amendments to the home loan program and accompanying congressional reports and argues that they show Congress's "clear" intent to make her eligible, contrary to the statute's plain language. Appellant's Substitute Br. at 10 (citing 38 U.S.C. § 694 (1953), S. Rep. No. 81-1286, at 90-91 (1950), H.R. Conf. Rep. No. 81-1893, at 47 (1950), and S. Rep. No. 93-1334, at 20-21 (1974)). First, she identifies one amendment from the 1950s that pertained to the computation of the amount of benefits available to a veteran, allowing the Secretary to consider whether security for an existing loan "has been disposed of because of . . . compelling reasons devoid of fault on the part of the veteran." 38 U.S.C. § 694 (1953); *see* S. Rep. No. 81-1286, at 90-91 (1950); H.R. Conf. Rep. No. 81-1893, at 47 (1950). Second, she identifies another amendment from 1976 in which Congress removed the "compelling reasons devoid of fault" requirement because of VA's inconsistent application of the standard. S. Rep. No. 93-1334, at 20-21 (1974).

But both amendments relate to computation, not eligibility, and eligibility (at issue in this case) is an issue entirely separate from computation. The 1950s amendment on computation appears in subsection (a) of section 694, the predecessor to section 3701, and subsection (a) was titled "Eligibility; amount of guaranty; computation." 38 U.S.C. § 694 (1953). The congressional reports show a distinction too. *See* S. Rep. No. 81-1286, at 90-91 (1950) (separating the eligibility phrase and the no-fault phrase that the appellant quotes with the sentence beginning "[t]his section would also provide that in computing the amount of the guaranty or insurance entitlement."); H.R. Conf. Rep. No. 81-1893, at 47 (1950) (discussing the no-fault provision's impact on computation: "Under such circumstances the Veterans' Administrator would deduct from the amount of any succeeding loan . . . ."). The appellant fails to acknowledge that the 1976 amendment explicitly related to old section 1802(b), concerning computation. S. Rep. No. 93-1334, at 20-21 (1974) (referring to the amendment as affecting section 1802(b), chapter 37, title 38, U.S.C.); *see* 38 U.S.C. § 1802 (1959) (containing separate subsections (a) and (b) for eligibility and computation

of amount of entitlement, respectively). Therefore, neither amendment provides evidence about Congress's intent as to eligibility.

Finally, the appellant cites several cases for sweeping pro-veteran language related to both the loan program and the VA system more generally. Appellant's Substitute Br. at 12. But these macro-level sentiments cannot fill the gaps left in the appellant's statutory interpretation arguments. The statutory language is clear, and there simply is no evidence in any of the legislative history that Congress intended to make persons in the appellant's position eligible for the VA home loan guaranty benefits in chapter 37.

Therefore, we hold that neither section 1151 nor chapter 37 confers eligibility for VA home loan guaranty benefits on section 1151 beneficiaries such as the appellant. And there is nothing else in the structure of title 38 that suggests the contrary. Because the appellant's first argument for eligibility fails, we must consider the appellant's second argument, whichrelies upon a different provision of title 38.

### 2. Incontestability Provision: 38 U.S.C. § 3721

For reasons not entirely clear in the record, the first time the appellant sought a guaranty, VA issued her a COE despite her ineligibility. *See* R. at 91, 240. The appellant argues that the incontestability provision in section 3721 prevents VA from contesting a COE recipient's eligibility after VA issues a COE. Appellant's Substitute Br. at 15-18. The Secretary insists that the provision does not affect VA's ability to contest a person's eligibility for the home loan guaranty program and is irrelevant to the appellant's case. Secretary's Substitute Br. at 16-19. The incontestability provision certainly has meaning. The key questions are with respect to *whom* and as to *what* does incontestability apply? We agree with the Secretary that Congress clearly intended the incontestability provision to apply to the relationship between the Government and lending institutions such as banks, not the Government and COE recipients, and as to the documents guaranteeing the loan, not a COE.

We begin with the statutory language. Section 3721, "Incontestability," provides:

> Any evidence of guaranty or insurance issued by the Secretary shall be conclusive evidence of the eligibility of the loan for guaranty or insurance under the provisions of this chapter and of the amount of such guaranty or insurance. Nothing in this section shall preclude the Secretary from establishing, as against the original lender, defenses based on fraud or material misrepresentation. The Secretary shall not, by reason of anything contained in this section,

9

be barred from establishing, by regulations in force at the date of such issuance or disbursement, whichever is the earlier, partial defenses to the amount payable on the guaranty or insurance.

Without a doubt, the incontestability provision is complex. But "complexity and ambiguity are distinct concepts." *Atencio v. O'Rourke*, 30 Vet.App. 74, 82 (2018). As we explain, the complexity in this statutory provision does not make it ambiguous.

To begin with, section 3721 refers to only two entities: the Secretary and a lender. Entirely absent from the field is any reference to a beneficiary of a home loan guaranty. While this is not dispositive of the question concerning to whom incontestability applies, it is a powerful indication that the relevant relationship for the purposes of this statute is the one between the Secretary and lender. After all, it would be odd if the provision were focused on a beneficiary when that person is never mentioned.

This interpretation is supported by considering an important phrase in the provision going to what is subject to the guaranty: "[a]ny evidence of guaranty or insurance." This is a critical phrase because, regardless of the relationship to which incontestability applies, the plain text makes clear that what is incontestable is only "evidence of guaranty." So what do we know about what "evidence of guaranty" is for purposes of section 3721? While this provision does not provide much clarity, another section in title 38, section 3702, operates with the incontestability provision as part of chapter 37's "harmonious whole." *Hornick*, 24 Vet.App. at 55-56. That provision offers important context for this question.

Section 3702 informs the interpretation of the incontestability provision's plain language by distinguishing among the various documents involved in applying for a VA home loan guaranty. In addition, section 3702 provides information on the stages of the loan transaction, which sets the stage for what Congress was doing:

> An honorable discharge shall be deemed to be a [COE] to apply for a guaranteed loan. Any veteran who does not have a discharge certificate, or who received a discharge other than honorable, may apply to the Secretary for a [COE]. Upon making a loan guaranteed or insured under this chapter, the lender shall forthwith transmit to the Secretary a report thereon in such detail as the Secretary may, from time to time, prescribe. Where the loan is guaranteed, the Secretary shall provide the lender with a loan guaranty certificate or other evidence of the guaranty. The Secretary shall also endorse on the veteran's discharge, or eligibility certificate, the amount and type of guaranty used, and the amount, if any, remaining.

10

38 U.S.C. § 3702(c). The relevant loan documents include (1) COEs, (2) loan guaranty certificates, and (3) other evidence of the guaranty.

Because the provision refers to "a loan guaranty certificate *or other* evidence of the guaranty" (emphasis added), it is apparent that Congress considered a loan guaranty certificate to fall within the larger class of evidence of the guaranty. Conspicuously absent is any indication of a similar relationship between COEs and evidence of the guaranty. Thus, the phrase "[a]ny evidence of guaranty or insurance" is best read not to include COEs. That is critical because the incontestability provision goes only to such "evidence of guaranty." *See* 38 U.S.C. § 3721.

It is important to note that these documents also relate to certain stages of the transaction, during which different pairs of actors interact. *See* 38 U.S.C. § 3702(c); 38 C.F.R. § 36.4328(a) (2018) (referring to the process of guaranteeing a loan, which is "subject to . . . 38 U.S.C. § 3721," as a "transaction"); U.S. Dep't of Veterans Affairs, *Summary of VA Home Loan Guaranty Benefits*, at 7 (Nov. 20, 2012, 8:49:02 AM), https://www.benefits.va.gov/BENEFITS/benefits-summary/SummaryofVAHomeLoanGuarantyBenefits.pdf ("First, you need to get a [COE] from VA to prove to the lender that you are eligible for a VA loan. Then you can apply for a VA-guaranteed loan through any mortgage lender that participates in the VA Home Loan Guaranty Program."); U.S. Dep't of Veterans Affairs, *Buying Process*, VA.GOV, https://www.benefits.va.gov/homeloans/purchaseco_ buy_process.asp (last visited Dec. 17, 2018) (describing "steps" that veterans should follow to get a VA home loan, including "Get a Certificate of Eligibility" followed by "Apply for your VA Loan" and "Loan Processing"). The Government and a veteran exchange a COE during an early stage of the transaction. *See* 38 U.S.C. § 3702(c) (providing early, in the second sentence of the subsection: "Any veteran who does not have a discharge certificate . . . may apply to the Secretary for a [COE]."); U.S. Dep't of Veterans Affairs, *Summary of VA Home Loan Guaranty Benefits*, at 7 (Nov. 20, 2012, 8:49:02 AM), https://www.benefits.va.gov/BENEFITS/benefits-summary/SummaryofVAHomeLoanGuarantyBenefits.pdf ("First, you need to get a [COE] from VA to prove to the lender that you are eligible for a VA loan.").

On the other hand, the government and a lender exchange a loan guaranty certificate *or other evidence of the guaranty* during a later stage of the transaction. *See* 38 U.S.C. § 3702(c) (providing later, in the fourth sentence of the subsection: "Where the loan is guaranteed, the

11

Secretary shall provide the lender with a loan guaranty certificate or other evidence of the guaranty."). The incontestability provision speaks to any evidence of guaranty, implicating that later stage of the transaction during which the Government and a lender interact. *See* 38 U.S.C. § 3721. Because the incontestability provision concerns this later stage, it supports a reading of section 3721 as concerning a lender, not a beneficiary.

The appellant makes a plain language argument that conflates the eligibility of a person for participation in the program and the eligibility of a loan for guaranty. Appellant's Substitute Br. at 15-18. But these are quite different things. *Compare* 38 U.S.C. § 3702(a) (describing eligible veterans), *with* 38 U.S.C. § 3703(a)(1) (discussing the terms on which a loan becomes eligible for guaranty and upper limits on amounts). Just because a *person* is eligible to participate in the program does not mean that the program will guarantee any *loan* he or she wants. The loan must also meet separate requirements. *See* 38 U.S.C. § 3703(a)(1). Additionally, an eligible person could seek a loan in an amount that the Government proscribes (ineligible loan) and a loan within the statutory amount requirements (eligible loan) at the same time. To drive the point home, a person without a COE could try to seek guaranty of an otherwise eligible loan but would not get through VA's door.

Moreover, the incontestability provision speaks to "the eligibility of the loan," not of a person. This language further reinforces the previously explained clear intent of Congress because it relates to the later stage of the transaction during which the Government and the lender interact. A lender confirms a loan's eligibility with the Government and receives from the Government a loan guaranty certificate or other evidence of guaranty as reassurance.[1]

Although we could end the inquiry here, the incontestability provision's legislative history bolsters our interpretation. *See INS v. Cardoza-Fonesca*, 480 U.S. 421, 432 n.12 (1987) (consulting legislative history to confirm plain language analysis); *Glaxo Operations U.K. Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990) (same); *Atencio*, 30 Vet.App. at 84 (same). That history supports the conclusion that Congress intended the incontestability provision to affect the relationship

---

[1] It is worth noting in passing that the scant caselaw concerning the incontestability provision is not helpful. First, there is no binding precedent interpreting the incontestability provision. Indeed, there are only three reported cases that even mention the provision. *See United States v. Neder*, 136 F.3d 1459 (11th Cir. 1998), *aff'd in part, rev'd in part*, 527 U.S. 1 (1999); *Century Fed. Sav. & Loan Ass'n of Long Island v. Roudebush*, 618 F.2d 969 (2nd Cir. 1980); *Mt. Vernon Coop. Bank v. Gleason*, 367 F.2d 289 (1st Cir. 1966). The only even marginally relevant decision, *Mt. Vernon Coop. Bank*, contains seemingly contradictory observations, none of which are helpful to the inquiry and all of which are dicta. *See* 367 F.2d at 290-92.

between the Government and lending institutions. As we explain, the provision was Congress's response to the need to incentivize lending institutions to purchase veterans' loans. This purpose is critically important because it highlights the actor with whom Congress was concerned with respect to incontestability. And as the Supreme Court has recently noted, one can use the purpose of a statute to assess the accuracy of a given interpretation. *See Hughes v. United States*, 584 U.S. ___, ___, 138 S. Ct. 1765, 1776 (2018).

While amending The Servicemen's Readjustment Act of 1944, Congress created the incontestability provision. Pub. L. No. 80-864, § 5, 62 Stat. 1206 (1948).[2] Congress enacted this provision as part of a whole scheme restoring a secondary GI-mortgage market. 94 Cong. Rec. 9440, 9496 (1948). Incontestability comes into play "once [the mortgage] has been sold in the secondary market." *Id.* at 9496. One representative opined that "this bill is vitally important to the veterans' housing program" because "[t]he most serious check on housing today apparently is the piling up of GI loans in the banks" and "[t]his bill provides a secondary market for GI housing loans" to move them out of the banks. *Id.* at 9500. A senator echoed this sentiment, observing that "this bill meets [the] particular phase of the problem": "where banks have filled themselves up with this type of loan, and do not propose to take any more loans of this character." *Id.* at 9440-41. An earlier report further clarifies the beneficiary of the incontestability provision: "Lenders have reached the saturation point for this type of paper, unless they are assured of support for a portion of their commitments, both present and future." S. Rep. No. 80-1701, at 2 (1948); *see also* H.R. Rep. No. 80-2157, at 1 (1948). Congress also discussed the importance of assurances to lenders regarding risk inherent in veterans' home loans. H.R. Rep. No. 80-2157, at 3 (1948). All of this reinforces the textual analysis concluding that section 3721 is focused on lenders, not beneficiaries.

Because Congress's intent is clear as to the operation of the incontestability provision whether one considers only the statutory language or also consults the legislative history, we must give effect to that unambiguously expressed intent. Section 3721 does not assist the appellant in her challenge to the Board's decision.

---

[2] The current version of the statute is substantively the same as the original with only minor superficial changes (e.g., substituting "Secretary" for "Administrator"). *Compare* Pub. L. No. 80-864, § 5, 62 Stat. 1206 (1948), *with* 38 U.S.C. § 3721.

But even if we considered the statute ambiguous, VA's implementing regulation, 38 C.F.R. § 36.4328, adopts a permissible interpretation of such ambiguity, and the Court would defer to it under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 844-45 (1984). That regulation speaks in terms of "loans guaranteed or insured," 38 C.F.R. § 36.4328(a), which relates to the later stage of the transaction when the Government and lenders interact. It also describes circumstances that would "constitute a defense against liability on account of the guaranty or insurance of the loan." 38 C.F.R. § 36.4328(a)(1). The incontestability provision still doesn't benefit the appellant.

## B. Equity

Having rejected the appellant's statutory arguments, we turn to her assertion that equity provides a basis on which to rule in her favor. The appellant seeks equitable relief from the Court based on four principles of equity: injunctive relief, equitable estoppel, laches, and waiver. Appellant's Substitute Br. at 19-24. As we explain, these equitable principles provide an insufficient foundation for relief in this case.

### 1. *Burris v. Wilkie*

Before addressing each of the equitable doctrines the appellant advances, we consider a more general matter concerning this Court and its equitable powers. The Federal Circuit recently considered the scope of our equitable authority in *Burris v. Wilkie*, 888 F.3d 1352 (Fed. Cir. 2018). The Federal Circuit recognized that, though this Court has equitable authority, that authority is constrained by the jurisdiction Congress conferred on the Court. *Id*. at 1360-61. It is possible that *Burris* standing alone forecloses the appellant's request for relief in this appeal.

*Burris* recognized that Congress conferred certain equitable authority on the Secretary. 888 F.3d at 1358 (citing 38 U.S.C. § 503(b)). In contrast, Congress did not provide this Court with a similar statutory grant of equitable power. *Id*. This fact was critical to the *Burris* court's conclusion that the equitable relief sought from our Court in that case was not available. *Id*. at 1358-59. The same is true here.

Section 503(b) provides that the Secretary has the authority to grant equitable relief if he or she "determines that a . . . surviving spouse . . . has suffered loss as a consequence of reliance upon a determination of the Department of eligibility or entitlement to benefits, without knowledge that it was erroneously made." 38 U.S.C. § 503(b). Assuming without deciding that the appellant has suffered a loss, her situation may be governed by this provision. Thus, Congress has

14

specifically conferred on the Secretary the equitable power to address the appellant's situation, and it has not done so with respect to this Court. Just as in *Burris*, accepting the appellant's invitation to exercise equitable power in this context would inappropriately expand our jurisdiction.[3] 888 F.3d at 1358-59.

Finally, *Burris* addressed an attempted invocation of the Court's "broad inherent equitable powers," beyond its statutory powers. *Id*. *Burris* distinguished the cases on which the appellant there relied to support a broad conception of the Court's equitable power by noting that "[t]hose cases . . . either involved relief provided by *other* statutes (e.g., the All Writs Act) or interlocutory or procedural relief not comparable to the substantive, monetary relief that Appellants seek here." *Id.* at 1361 (emphasis in original). Though the Federal Circuit acknowledged the Court's "authority to grant certain forms of non-substantive equitable relief required to enable the [Court] to carry out its statutory grant of jurisdiction," it cautioned that "the Veterans Court cannot invoke equity to *expand* the scope of its statutory jurisdiction." *Id.* (emphasis in original). The appellant's requested relief is more like the substantive relief in *Burris* than the non-substantive types of relief that *Burris* recognized as a part of the Court's arsenal. Simply put, assuming the appellant loses on the other issues, she asks the Court to decide she wins based solely on equity and to grant her a benefit in contravention of Congress's statutory scheme that proscribes her eligibility. She wants a home loan guaranty from VA. While this relief is not necessarily monetary given that many veterans will never suffer a loss requiring VA to outlay funds, this relief is substantive in that the Court would decide the merits of her entitlement to a home loan guaranty, which may require an outlay of funds should she default. The appellant asks to win, not to continue litigating. To give her such a win based solely on equity would expand the scope of our jurisdiction, and we cannot do that.[4]

---

[3] It is also noteworthy that section 503(b) is not restricted to the payment of money, the relief at issue in *Burris*. Rather, the provision extends to "relief . . . the Secretary determines is equitable, including the payment of moneys." 38 U.S.C. § 503(b).

[4] We also note that granting equitable relief in this context would potentially run afoul of the Appropriations Clause. *See Burris*, 888 F.3d at 1359 (citing U.S. CONST., art. I, § 9, cl. 7). The doctrine of constitutional avoidance counsels that we should interpret our jurisdictional statute and section 503(b) to avoid addressing this serious question. *See Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 836 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems."); *Burris*, 888 F.3d at 1359 ("We decline to interpret the Veterans Court's jurisdictional statute in a manner that runs afoul of–or at a minimum raises serious questions pertaining to–this constitutional restriction [referring to the Appropriations Clause].").

## 2. Individual Equitable Devices

Even if *Burris* does not cover this situation, the specific types of equitable remedies the appellant seeks are not appropriate in this context. The appellant first refers to injunctive relief. Though the Court has the power to enter an injunction as a remedy in an appropriate case, *see Kaplan v. Brown*, 7 Vet.App. 425, 427-29 (1995), this does not help the appellant. She first must establish that she is entitled to prevail. The injunction can't do that. In other words, were we to rule in the appellant's favor, we could use an injunction to implement relief, but it would not act as its own *theory* supporting why the appellant wins.

We now turn to estoppel. As a threshold matter, it is unclear whether one may ever estop the Government. *See Gazaille v. McDonald*, 27 Vet.App. 205, 211 (2014) ("The United States Supreme Court has never held that equitable estoppel may be applied against the Government, although it has, perhaps, left the door to that possibility slightly ajar."). But we need not explore this question fully now. We find it important that Congress may essentially authorize the use of estoppel-like principles against the Government. Congress did so, for example, by adopting an incontestability provision similar to the one discussed above that functionally allows certain private parties to estop the government in analogous situations such as the Federal Housing Administration's (FHA's) mortgage insurance program. *Jay F. Zook, Inc. v. Brownstein*, 237 F. Supp. 800, 807 (1965) (analyzing the FHA program's incontestability provision contained in 12 U.S.C. § 1709(e)). This estoppel-authorization concept is relevant to the case at hand because Congress likened the veterans' loans incontestability provision to the FHA loans' incontestability clause. 94 Cong. Rec. 9440 (1948); H.R. Rep. No. 80-2157, at 3 (1948). If Congress provided private parties a statutory means to estop the Government in section 1709(e), it follows that Congress did so too in section 3721, given the similar language in these provisions and intentionally parallel purpose and scope. *Compare* 38 U.S.C. § 3721, *with* 12 U.S.C. § 1709(e). But as we have explained, Congress intended that only lenders receive this privilege of estoppel. Because Congress uses explicit statutory grants to give private parties this privilege, we decide that Congress's decision not to grant this privilege to others means that Congress intended to withhold this privilege from them. Therefore, equitable estoppel is not available to the appellant here even if in some theoretical sense the Government can be estopped.

And the appellant fares no better with her final two theories, laches and waiver. These devices do not serve as *affirmative* theories of relief, yet the appellant attempts to use these

defenses on offense. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 666-67 (9th Cir. 1998) (citing *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 210 (9th Cir. 1957)) ("[I]t is settled that waiver can be employed only for defensive purposes. . . . The shield cannot serve as a sword."); *N. Pac. Ry. Co. v. United States*, 277 F.2d 615, 624 (10th Cir. 1960) ("[L]aches is available only as a bar to affirmative relief."); *LaPrade v. Rosinsky*, 882 A.2d 192, 198 (D.C. 2005) (prohibiting parties from using the laches shield as a sword); *Corona Props. of Fla., Inc. v. Monroe Cty.*, 485 So. 2d 1314, 1318 (Fla. 3d DCA 1986) (preventing a business from arguing that laches barred the county from revoking a building permit) *Short v. Rapping*, 522 N.Y.S. 2d 201, 202 (2d Dep't 1987) (prohibiting parties from using the laches shield as a sword). Therefore, we conclude that the appellant can't win on either theory here.

For all these reasons, we hold that we may not use equitable principles to give the appellant the substantive relief she seeks in this matter.

### III. CONCLUSION

After consideration of the parties' briefs, oral argument, the record on appeal, and the governing law, the Court AFFIRMS the March 21, 2016, Board decision denying the appellant eligibility for home loan guaranty benefits.

GREENBERG, *Judge,* dissenting: I respectfully, but emphatically, disagree with my esteemed colleagues. The interpretation of the statute is entirely clear to me. The appellant is the widow of Korean War combat veteran David Burkhart. Record (R.) at 33 (DD Form 214). The veteran earned two Bronze Stars during his service. R. at 33. The veteran died in October 2003 while under VA medical care. R. at 473-74. In August 2007, VA granted the appellant dependency and indemnity benefits under 38 U.S.C. § 1151 because it found that the veteran's "death . . . was due to an event not reasonably foreseeable." R. at 287; *see* 38 U.S.C. § 1151(a)(1)(B).

In December 2007, the appellant sought a certificate of eligibility (COE) for home loan guaranty benefits as provided under 38 U.S.C. §§ 3701 et seq. (chapter 37). R. at 240. The COE was issued that month, although the appellant did not apply for a home loan using this certificate. R. at 91. The appellant requested another COE in December 2013. R. at 90. VA informed the appellant that the December 2007 COE was issued in error and that the appellant was not eligible

for home loan guaranty benefits as a section 1151 beneficiary. R. at 87-89. In March 2016, the Board of Veterans' Appeals affirmed this denial. R. at 4-7. This appeal ensued.

A review of the relevant statutory provisions shows that Congress intended a result different from that reached by the majority. Congress provided for dependency and indemnity compensation for a qualifying death "in the same manner *as if such . . . death [was] service-connected*." 38 U.S.C. § 1151(a) (emphasis added). Congress established home loan guaranty benefits to be provided to any eligible "veteran," a term that includes "the surviving spouse of any veteran . . . who died from a service-connected disability." 38 U.S.C. §§ 3701(b)(2), 3702-03. Because her husband's death is treated *as if* it had been service-connected, the appellant must qualify as a surviving spouse of a veteran "who died from a service-connected disability" for the purposes of entitlement to home loan guaranty benefits; otherwise, the words "as if" are rendered meaningless. *Cf. United States v. Butler*, 297 U.S. 1, 65, (1936) ("These words cannot be meaningless, else they would not have been used."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (West eds. 2012) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").

"[T]he meaning of statutory language, plain or not, depends on context." *Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993) (quoting *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, (1991). Title 38 is an imperfect collage meant to organize decades of Congressional intent towards veterans into a consumable statutory scheme. *See* Pub. L. No. 85-857, 72 Stat. §§ 1105 et seq. (the legislation creating title 38 was titled "An Act to consolidate into one Act all of the laws administered by the Veterans' Administration, and for other purposes"). The addition of section 1151(c) does not reflect the desire of Congress to limit ancillary benefits under this section to those in chapters 21 and 39. Such a position would suggest that Congress intended to provide specially adaptive housing and automotive benefits, but no other benefit, to a woman who is a widow solely because of improper VA care. There is no logical justification for this conclusion. The addition of section 1151(c) in 2004, in response to the Federal Circuit's decision in *Kilpatrick v. Principi*, merely evidences an admission of a drafting oversight of dense legislation. *See* 327 F.3d 1375, 1383 (2003) ("Throughout the various [legislative] changes, Congress has given no indication of any intention to disturb the historical eligibility of veterans disabled by VA medical treatment for

the housing benefit that was conferred when the benefit was inaugurated in 1948"). Therefore, unless Congress specifically excluded an ancillary benefit from the coverage of section 1151, the Court must be tasked with determining the historical intent of Congress in regard to that benefit. *See Henderson v. Shinseki*, 562 U.S. 428, 432 n.2 (Veterans Court's scope of review, § 7261, is similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706); *see also Kilpatrick*, 327 F.3d at 1378.

A review of the statutory context and background of the home loan guaranty program confirms that the appellant is an intended recipient of the benefit. Congress enacted the home loan guaranty program via the Servicemen's Readjustment Act of 1944. *See* Pub. L. No. 78-346, 59 Stat. § 284 (1944). Shortly after the Act's enactment, Congress determined that "modifications and improvements in the existing home-loan programs of the Veterans' Administration [were needed] . . . to give greater assistance and stimulus to increased production of privately financed housing of sound standards at more moderate sales prices and rents." Senate Report No. 892 81st Congress 1st Session. To achieve this goal, Congress liberalized the program in 1950 to allow broader Veteran eligibility.  *See* Pub. L. No. 81-475, 284 Stat. § 301.

The discourse surrounding the act and its accompanying amendments demonstrate Congress's intent to spur private enterprise and make additional moderately priced homes available within the general stream of commerce. *See* S. REP. NO. 892, 81ST CONG., 1ST SESS.; *see also* H.R. REP. NO. 1686, 81ST CONG. 2ND SESS. In other words, the primary purpose of the Act was not to provide a benefit to those who suffered a disability in service, but instead to provide broad economic growth through the VA system. To be consistent with this purpose of the Act, Congress must have intended to provide an expanse of claimants–including those claiming section 1151 benefits–eligibility for this benefit.

While piecemeal legislation has resulted in apparent inconsistencies and ambiguities, Congress has consistently striven to care for veterans and their families since the beginning of the Republic. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792) ("[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of Congress."); *see also* 1 Stat. 243 (1792) ("An Act to provide for the settlement of the Claims of Widows and Orphans barred by the limitations heretofore established, and to regulate the Claims to Invalid Pensions."). It is the duty of the courts to ensure that the executive implements the statutes that Congress enacts on behalf of veterans and their families. *See Marbury v. Madison*, 5 U.S. 137, 164

(1803) ("By the act concerning invalids, passed in June, 1794, vol. 3. p. 112, the secretary at war is ordered to place on the pension list, all persons whose names are contained in a report previously made by him to congress. If he should refuse to do so, would the wounded veteran be without remedy?").

After consideration of the above, I would have held that the appellant was entitled to the home loan guaranty benefits ancillary to her section 1151 dependency and indemnity benefits.